SARAH FRANCES COWLES STEWART *et al.* Appellants, *vs.* SYDNEY F. ANDREWS *et al.* Appellees.

*Opinion filed February 19, 1909—Rehearing denied April 7, 1909.*

EASEMENTS—*a permissive use cannot ripen into a prescriptive right.* The occasional use of the private passageway of an adjoining land owner for the purpose of delivering coal or kindling to the user's premises, either with the consent of such land owner or without his knowledge but under no claim of right by the user, cannot ripen into an easement, by prescription, in the use of the passageway for such purpose.

APPEAL from the Circuit Court of Cook county; the Hon. GEORGE A. CARPENTER, Judge, presiding.

MASON BROS., (HENRY E. MASON, of counsel,) for appellants.

ALBERT M. KALES, for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a petition filed under the Burnt Records act by the appellants, against the appellees, in the circuit court of Cook county, to establish title to the south-east quarter of block 46, in Kinzie's addition to the city of Chicago. The appellees filed an answer and the appellants a replication, and the case was referred to a master in chancery to take the proofs and report his conclusions. · The master filed a report, in which he found the appellants were the owners of said premises in fee simple, free from the claims of the appellees, and recommended a decree in accordance with such finding. The court sustained exceptions, in part, to the master's report, and decreed that the appellants were the owners in fee of said premises, subject, however, to a right of ingress and egress of the appellees over the north nine feet of said premises (except the west forty feet) for the purpose of the delivery of fuel to the dwelling house situated upon the premises of the appellees located immediately north of the premises of the appellants, from which decree appellants have prosecuted an appeal to this court. The sole question, therefore, for determination upon this appeal is, have the appellees an easement in the north nine feet (except the west forty feet) of the south-east quarter of said block 46, which premises the court held belonged to the appellants in fee?

It appears from the record that prior to the Chicago fire, in 1871, said block 46 had an alley fourteen feet wide

running north and south through its center and an alley nine feet wide running from the street upon the east side of the block to said north and south alley, said east and west alley occupying the north nine feet of the south-east quarter of said block. The following plat will show the situation of said block, with the improvements thereon, at the time the petition was filed:

The premises north and south of said nine-foot alley, prior to the fire, were improved, and said alley was then in use by the residents of said block and somewhat by the public. The improvements on the block were destroyed at the time of the fire. The south thirty-two and one-half feet of the north-east quarter of the block prior to 1871 was owned by Hugh Adams, and soon after the fire he re-built a dwell-

ing house upon that portion of said block, the south wall of which was situated about six feet north of the north line of said alley and fronting upon the street upon the east side of the block. Perry H. Smith owned the east half of the south-east quarter of the block prior to the fire and soon after the fire acquired title to the west half of said quarter block, and, apparently with a view of building a dwelling house and barn upon that part of the block, he procured a vacation of said nine-foot alley by the city council of the city of Chicago. There is some evidence in the record, which is very indefinite in character, that after the alley was vacated it was feared by Mr. Adams and his wife that Mr. Smith intended to place the north wall of his new house upon the north line of the south-east quarter of said block and thereby obstruct the passage of the light and air to their dwelling house from the south and cut off their means of access from the street to their basement upon that side of their house, and apparently there was some talk between Mr. Adams and Mr. Smith upon that subject. Mr. Smith, however, placed the north wall of his house upon the south line of said nine-foot strip and the north wall of his barn, which was forty feet wide, upon the north line of said strip. He paved said nine-foot strip east of his barn to the street as a driveway, and placed upon the north side of his house a porte-cochere, which extended over said nine-foot driveway from the house to its north line, and Mr. Adams constructed a stone coping from the street, west, along the north line of said driveway to the rear line of his house, and an iron fence from the west end of the stone coping to the north-east corner of the Smith barn, and an iron fence, running north and south, from the west end of the stone coping to the south-west corner of his house, which shut off the rear part of his lot from the front part, through which iron fence running north and south there was a gateway, and thereupon the friendship which had theretofore existed between the Smith family and the Ad-

ams family, who were relatives, seems to have been re-stored. Mrs. Smith, who resided upon the premises in question from before the fire until 1891, testified that from the time the new house was built, in 1874, to 1891, she and her family were in the sole and exclusive possession of the nine-foot driveway running from the street beneath the said porte-cochere to the north door of their barn, and that neither the Adams family nor anyone else during that time had any right to use, or did use, said driveway for any purpose or in any way. The title to the premises in about 1891 passed out of the Smith family, and her testimony only comes down to that time. Mrs. Smith is strongly cor-roborated by her daughter, Mrs. Sawyer, who lived at her father's home from the time the new house was built un-til her marriage, which occurred in 1884, and by her son, Perry H. Smith, Jr., who lived upon the premises until 1878 and who frequently visited the property up to 1891.

The title to the Adams property on the north passed out of the Adams family in about 1890, Mr. Fentress becom-ing the owner thereof in that year. A number of persons who lived in the Adams property from 1873 or 1874 until a short time prior to the filing of this bill, testified that it was the custom of each family living in the Adams house during all that time to take the fuel used in the dwelling house into its basement by way of said driveway,—that is, that teams hauling coal or wood would, after the Smith house was built, drive upon said driveway once a year with furnace coal and two or three times a year with kitchen coal, and occasionally with kindling, and unload it through a chute and coal-hole into the basement of the Adams house. The evidence also tends to show that the use was more frequent after 1890, while the Fentress family lived in the house, than while it was occupied by the Adams fam-ily. The only evidence tending to show a prescriptive right to use said driveway as a means of getting fuel into the Adams house after the Smith house was built, was that

furnace and kitchen coal, and occasionally kindling, were shunted into the basement of the Adams house through a window or coal-hole, by means of a chute, from wagons driven upon said driveway while loaded and backed out of said driveway after they were unloaded. Such use is, however, denied by Mrs. Smith during all of the time that she lived in the Smith house, which was from 1874 to 1891, and by her daughter and son during the periods of time they resided at home or were familiar with the property.

In *Chicago, Burlington and Quincy Railroad Co.* v. *Ives*, 202 Ill. 69, on page 71, it was said: "In order that a way may be established by prescription, the use and enjoyment thereof must have been adverse, under a claim of right, exclusive, uninterrupted, and with the knowledge and acquiescence of the owner of the land in or over which the easement is claimed, for the period of twenty years."

In *Rose* v. *City of Farmington*, 196 Ill. 226, on page 227, it was said: "In order to establish a way by prescription the use and enjoyment of what is claimed must have been continued for a long period, to-wit, twenty years. It must have been adverse, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owner of the land in or over which the easement is claimed. The adverse use which will give title, by prescription, to an easement, is substantially the same in quality and characteristics as the adverse possession which will give title to the land in fee. (Washburn on Easements, 131; 19 Am. & Eng. Ency. of Law, 11; *City of Chicago* v. *Chicago, Rock Island and Pacific Railway Co.* 152 Ill. 561.) The adverse possession which is required to constitute a bar to the assertion of a legal title by the owner of it must include these five elements: It must be (1) hostile or adverse; (2) actual; (3) visible, notorious and exclusive; (4) continuous; and (5) under a claim or color of title.—*Zirngibl* v. *Calumet Dock Co.* 157 Ill. 430."

It was also said in the *Ives case* (p. 71) : "A mere permissive use never ripens into a prescriptive right. (Washburn on Easements, p. 132.) It must appear the use was enjoyed under such circumstances as to indicate that it was claimed as a right, and was not regarded by the parties as a mere privilege or license, revocable at the pleasure of the owner of the soil. (*Dexter* v. *Tree,* 117 Ill. 532.) The use of a way without objection or hindrance is not inconsistent with use by permission.—*Smith* v. *City of Sedalia,* 152 Mo. 283; 48 L. R. A. 711."

In *Dexter* v. *Tree,* 117 Ill. 532, on page 541, the court said: "There is nothing tending to show that the plaintiffs did these acts under any claims of right, and so far as we can see they were merely permissive, and in no way adverse to the rights of defendants in error nor inconsistent with its use by defendants in error under the agreement between Boyce, Magie and High. In *Hall* v. *McLeod,* 2 Metc. (Ky.) 102, the court says: 'It cannot be admitted that where the proprietor of lands has a private passway through it for his own use, the mere permissive use of it by others for half a century would confer upon them any right to its enjoyment. So long as it is merely permissive it confers no right, but the proprietor can prohibit its use or discontinue it altogether, at his pleasure.' To create the presumption of a grant of the right of way the circumstances attending its use must be such as to make it appear that it was established for the benefit of the claimant, or that it was accompanied by a claim of right or by such acts as manifested an intention to enjoy it without regard to the wishes of the owners of the land. The use must have been enjoyed under such circumstances as will indicate that it has been claimed as a right and has not been regarded by the parties merely as a privilege, revocable at the pleasure of the owners of the soil. In *City of Quincy* v. *Jones,* 76 Ill. 231, this court said: 'Moreover, it seems well settled

that an adverse right to an easement cannot grow out of a mere permissive enjoyment for any length of time.'"

From an examination of this entire record we are impressed with the view that the use of said alley by the appellees and their grantors, subsequent to the time the Smith house was built,—probably in the year 1874,—down to the commencement of this suit, was merely permissive. Prior to about the time Mr. Smith built upon the south-east quarter of block 46 the nine-foot strip running from the street on the east to the north and south alley through the block was in use as an alley. At that time the alley was vacated by the city and the west forty feet thereof entirely closed by the erection of the Smith barn. The strip thereafter ceased to be an alley across the east half of the block. As stated, the evidence contains a suggestion, founded largely upon rumor, that Mr. and Mrs. Adams feared Mr. Smith would place the north line of his new house upon the north line of said nine-foot strip. They, doubtless, felt, as they had left a vacant strip of land six feet wide south of their house Mr. Smith ought to leave a vacant strip north of his house. When the Smith house was built a strip nine feet in width was left open on the north side of the Smith house. This strip corresponded in width with that of the old nine-foot alley. The alley, however, had been vacated its entire length, and when the Smith house was completed said strip was paved by Mr. Smith as a driveway from the street on the east of his property to his barn, which, in part, stood upon the west forty feet of the old alley, and a porte-cochere was erected by Smith on the north side of his house which extended completely over said nine-foot strip, and Mr. Adams thereafter erected upon the south line of his property, which was the north line of said nine-foot strip, a stone coping and iron fence, which entirely severed his premises from the driveway upon the property of Mr. Smith, which then included said nine-foot strip. Theretofore Mr. Adams had had a gate leading from his premises

into said nine-foot alley. When he erected the stone coping and iron fence this gate was closed up, and opposite the coal-hole into the basement of his house, which had been constructed before the alley was vacated or closed up, in part, by the Smith barn or the Smith house built, he left no depression in the stone coping, but the stone coping at that point was the same as at other points along his south line. These acts of the parties, we think, speak louder than words, and clearly show Mrs. Smith was right in her testimony when she stated that during no time after the new house was built did Mr. Adams, or anyone else, ever have or claim to have any right in said driveway running from the street to their barn. It is probable that the driveway may have been used thereafter by the occupants of the Adams house, occasionally, as a means of getting coal and kindling into the basement of their house. We do not think, however, the evidence shows, or even tends to show, that such use was made under a claim of right, but think it was wholly permissive.

It is clearly not the law of this State that a neighbor who suffers an adjoining owner to drive in upon his private way with a load of coal or a load of kindling thereby lays the basis of a prescriptive right which will thereafter build up an easement in his property. Especially should such be not held to be the law in a growing and changing community like the city of Chicago, where residence property is constantly changing in the uses and purposes to which it may be properly applied. The Adams property abutted upon the street upon the east and upon the alley in its rear, and the evidence shows the kindling wood used in the house was usually thrown over the fence from the alley into the rear of the lot and broken up and from there carried into the basement, and that coal could have been taken into the basement in the same manner. The use sought to be made of the nine-foot strip by persons occupying the Adams property was therefore only a convenience

and not at all necessary to the enjoyment of that property. What was said, therefore, in the *Rose case*, on page 229, is applicable here. It was there said: "In the case at bar the alleged way was merely a convenience for the owner of the lot north of it. It was not a necessity, for he could drive over his own lot to reach that portion lying east of appellee's lot. It is a matter of common observation that the public makes use of any open, unenclosed space which affords a more convenient way of reaching any given place than the regular way would, and it would be contrary to·established legal principles, and to natural justice as well, to allow the public, under such circumstances and by the mere acquiescence of the owner, to acquire the permanent right of way. (*Kyle* v. *Town of Logan*, 87 Ill. 64; *Town of Brushy Mound* v. *McClintock*, 150 id. 129.) Mere permissive use is never sufficient. And the same is true in acquiring a private way by prescription. There is nothing in the testimony to show that appellant or any of her grantors, or anyone else, ever claimed an adverse right to the use of this supposed way. All the testimony is consistent with the permissive use of the same because the owner did not need it for his own use,—was disposed to be accommodating to his neighbors."

The evidence also fails to show that the nine-foot way, after the Smith house was built, was ever used by persons occupying the Adams property with the knowledge and acquiescence of the owners of the Smith property. Mrs. Smith, who lived upon the property for something like sixteen years after the new house was built and for a number of years after her husband died, as well as her son and daughter, all testified that they never knew of the driveway being used by the persons occupying the Adams house as a means of getting fuel into the basement of the Adams house. This evidence is not contradicted except by claiming that the unloading of fuel in the alley was necessarily accompanied by noise, of which the occupants of the Smith

house ought to have taken notice. From 1874 to 1886 or 1887 the Adams family and the Smith family, who were relatives and friends, occupied the said adjoining premises, after which the Adams house was vacant until 1890, and if it be conceded that the occupants of the Adams house during that time, or their grantees, did use the private driveway on the Smith property occasionally, or even periodically, as a way from which to reach their basement with fuel, we do not think, by reason of the fact that the Smiths were neighborly and permitted such use, that the owners of the Smith property should thereby be held to have fastened upon their property an easement which would materially lessen its value. The law of this State, we think, is clearly stated in *Dexter* v. *Tree, supra,* upon this subject, in the quotation from *Hall* v. *McLeod,* made in that case, where it was said: "It cannot be admitted that where the proprietor of lands has a private passway through it for his own use, the mere permissive use of it by others for half a century would confer upon them any right to its enjoyment. So long as it is merely permissive it confers no right, but the proprietor can prohibit its use or discontinue it altogether, at his pleasure."

From a painstaking examination of this record and the authorities cited in the briefs of counsel we have reached the conclusion that the trial court erred in holding that the appellees had an easement, by prescription, in said nine-foot strip east of the barn upon the Smith property for the purpose of taking fuel into the basement of the house situated upon the Adams property.

The decree of the circuit court will be reversed and the cause remanded to that court, with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*