Theodore S. CHACONAS, Appellant,

v.

Bertram H. MEYERS, et al., Appellees.

No. 82–555.

District of Columbia Court of Appeals.

Argued June 8, 1983.

Decided August 2, 1983.

John William Mannix, Washington, D.C., for appellant.

David E. Schreiber, Washington, D.C., for appellees.

Before NEWMAN, Chief Judge, TERRY, Associate Judge, and KELLY, Associate Judge, Retired.

KELLY, Associate Judge, Retired:

This is an appeal from an order of the trial court granting appellees' request to establish a prescriptive right-of-way across the northern portion of appellant's property for the purposes of placing garbage for weekly collection in a public alley and gaining access to and from a nearby street. As grounds for its order, the court found that appellees had presented a prima facie case for a prescriptive easement and that appellant had not rebutted the resulting presumption of adverse user. The court also ruled in the alternative that appellees established by the preponderance of the evidence their entitlement to a prescriptive easement.

After reviewing the record, we conclude that appellees' evidence of an open, notorious and exclusive user for the statutory period raised a presumption that the user was adverse, but that this presumption was rebutted by testimony establishing that appellees' use was, at the least, with appellant's implicit permission. Accordingly, we reverse the trial court's order granting appellees a prescriptive easement across appellant's land, finding it to be clearly erroneous and without evidence to support it.

I

Appellees are the respective trustees of two trusts in which is vested joint ownership of a parcel of land, Lot 868 in Square 1209 of the District of Columbia, commonly known as 3061 M Street, N.W. Appellant similarly is trustee of a trust in which is vested ownership of the alleged servient estate in this case, Lot 869 in Square 1209 in the District of Columbia, commonly known as 3063 and 3065 M Street, N.W. Lot 869 is contiguous with and immediately to the west of Lot 868.

Lot 868 was purchased in 1941 by appellees'[1] predecessors in interest, Mr. and Mrs. Harry Meyers. The following year they erected the structure which presently stands on that site, operating it as a store on the ground level from 1941 until 1966 and residing with their family in the apartment above from 1942 until 1967. Since 1967, the property has been leased to a variety of commercial and residential tenants. In 1977, Mr. and Mrs. Meyers conveyed a one-half interest in the property each to the Bertram Meyers Trust and to the Lois M. Vogel Trust. Ownership of Lot 869 has rested with appellant and appellant's predecessors in interest, Mr. and Mrs. Theodore H. Chaconas, at all times since before 1941 to the present. For many years the property was used as a residence by the Chaconas family and more recently has been leased for commercial and residential use.

The testimony at trial in support of appellees' claim of a prescriptive easement established that, beginning in 1942 and lasting for the entire period of their residence, members of the Meyers family periodically crossed the rear, northern portion of appellant's land (Lot 869), within a width of approximately five feet from the northern boundary line, in order to obtain access from the northwest corner of appellees' property (Lot 868) to the public alley which extended, west to east, from 31st Street to the northwest corner of appellant's adjacent land. The testimony further established that this use was for the purposes of placing accumulated household garbage in the alley for weekly collection and of gaining access to and from 31st Street. The

trial court determined that this use was open, notorious, continuous, exclusive and adverse for a period of twenty-five years. It further found that this use, although with the knowledge and acquiescence of appellant, was without permission and that appellant did not meet its burden of introducing evidence to contradict appellees' prima facie case and resulting presumption that the use was adverse. Alternatively, the court found that appellees had proved by a preponderance of the evidence that they acquired a prescriptive right across the northern portion of appellant's lot.

Appellant contests these findings. Conceding all other elements requisite to proving an easement by prescription, he claims that the evidence did not establish by a preponderance of the evidence that appellees' use was adverse.

## II

The law governing the creation of prescriptive easements is clear. "Effective user to establish a prescriptive easement must be open, notorious, exclusive, continuous and adverse," *Umhau v. Bazzuro,* 76 U.S.App.D.C. 394, 396, 133 F.2d 356, 358 (1942) (citing *Reid v. Anderson,* 13 App.D.C. 30 (1898) (adverse possession)); *accord Johnsen v. Crosby,* 109 U.S.App.D.C. 390, 288 F.2d 374 (1960) (per curiam) (Danaher, J., concurring),[2] for the statutory period of fifteen years. *See* D.C.Code § 12–301(1) (1981); *Aleotti v. Whitaker Brothers Business Machines, Inc.,* 427 A.2d 919, 922 (D.C. 1981); *accord Zlotnick v. Jack I. Bender & Sons, Inc.,* 285 F.Supp. 548, 553 (1968).[3] The burden of establishing such user by a

---

1. For sake of convenience, we refer jointly to the named trustees and the trusts which they represent as "appellees" and "appellant" respectively.

2. The RESTATEMENT OF PROPERTY § 457 (1944), states:

    An easement is created by such use of land, for the period of prescription, as would be privileged if an easement existed, provided the use is (a) adverse, and (b) for the period of prescription, continuous and uninterrupted.

3. *But see Baltic Investment Co. v. Perkins,* 154 U.S.App.D.C. 380, 382 n. 4, 475 F.2d 964, 966 n. 4 (1973) (commenting upon the apparent conflict between D.C.Code § 12–301(1) (1967), limiting the time for bringing actions for the recovery of lands, tenements, or hereditaments to fifteen years, and D.C.Code § 16–3301 (1967), establishing a twenty year maximum tolling period for saving the right of infants or others under legal disability to file an action to quiet title obtained by adverse possession).

preponderance of the evidence, *see Johnsen v. Crosby, supra* (Danaher, J., concurring), rests upon the claimant. *Baltic Investment Co. v. Perkins, supra* note 3, 154 U.S.App. D.C. at 383, 475 F.2d at 967.

▪▪▪ "[A] user is adverse if not accompanied by any recognition, in express terms or by implication, of a right in the landowner to stop such use now or at some time in the future." *Manos v. Day Cleaners & Dyers, Inc.,* 91 Ohio App. 361, 363, 108 N.E.2d 347, 349 (1952) (quoting 2 TIFFANY ON REAL PROPERTY § 519, at 2042 (2d ed.)).[4] The element of adverse user may be established by evidence that the claimant's use was under a claim of right, *see Aleotti v. Whitaker Brothers Business Machines, supra,* 427 A.2d at 921–22, or may be presumed from proof of a prima facie case of open and continuous use for the appropriate statutory period in the absence of contrary evidence. *See Kogod v. Cogito,* 91 U.S.App. D.C. 284, 286, 200 F.2d 743, 745 (1952); *accord Baltic Investment Co. v. Perkins, supra* note 3, 154 U.S.App.D.C. at 383, 475 F.2d at 967.[5] Hence, where a claimant relies upon a presumption of adverse user, the landowner may rebut that presumption with contrary evidence of permissive use, either express or implied. *Id.*

### III

In granting appellees a right-of-way across appellant's land, the trial court found that appellees presented a prima facie case of open and continuous use for the statutory prescriptive period; that this use was presumptively adverse; and that appellant had presented no evidence to the contrary. It stated: "There is no evidence before this Court whatever that the Chaconas family ever expressed orally or otherwise permission to the Meyers family that they could make use of Lot 869." By so ruling, the court ignored testimony from witnesses for both sides which established a history of interaction between the parties—both generally and specifically during instances of appellees' use of Lot 869.

Through the testimony of two witnesses,[6] appellant attempted to prove that the use of its land by appellees was the product of friendship and neighborly accommodation. Harry Chaconas testified that the Chaconas family frequently encountered appellees carrying their garbage as they crossed Lot 869 and exchanged pleasantries with them. He stated that his family never sought to stop this use of their land. Indeed, they agreed with it, viewing it to be an easier way for the Meyers to rid themselves of their trash, and evidenced their neighborliness by stopping to chat with the Meyers as they passed through.

This testimony was echoed by that of Bertram Meyers, a witness for appellees. During cross-examination, Mr. Meyers admitted that he and his family got along well with the Chaconas family. From time to time, they would run into each other as the Meyers crossed the Chaconas' yard and would stop to say hello. Although permission to cross the Chaconas' yard was never granted explicitly, neither was permission

---

**4.** According to the RESTATEMENT OF PROPERTY, *supra,* § 458:

> A use of land is adverse to the owner of an interest in land which is or may become possessory when it is
> (a) not made in subordination to him, and
> (b) wrongful, or may be made by him wrongful, as to him, and
> (c) open and notorious.

**5.** Appellant's assertion that our case law has not adopted this presumption of adverse user is incorrect. A review of the facts of both decisions cited in the text, *Baltic Investment Co. v. Perkins* and *Kogod v. Cogito,* demonstrates that the language enunciating the presumption

was, in each case, more than mere *obiter dictum;* application of the presumption disposed of each appeal. *See M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971).

**6.** These witnesses were: Harry T. Chaconas, the son of Theodore H. Chaconas, appellant's predecessor in interest, who lived on Lot 869 from his birth in 1906 until 1970 and Theodore S. Chaconas, the grandson of Theodore H. Chaconas, who lived on Lot 822, adjacent and immediately to the west of Lot 869, from his birth in 1941 to 1957. The testimony of a third witness, Gus Chaconas, another son of Theodore H. Chaconas, was inconclusive.

ever requested by the Meyers. Nonetheless, no one in the Meyers family was ever prevented from using the path.[7]

In addition, witnesses from both sides testified that the Chaconas' family dog, Corky, ruled the backyard roost, frequently presenting a noisy obstacle to quiet passage until brought inside by a member of the Chaconas household. Bertram Meyers testified that Corky roamed freely throughout the Chaconas' yard—all the way to the post office wall which abutted the Chaconas' property on the north side. Lois Meyers Vogel stated that she was afraid of all dogs and that she would not enter the Chaconas' backyard until certain that Corky was not on the loose. She often requested her husband or brother to precede her into the yard to verify his whereabouts. Appellant Theodore S. Chaconas described Corky as a feisty dog who always barked at those crossing the yard, creating a nuisance. And further, Harry T. Chaconas testified that people crossing the yard often carried a broom to keep the dog away. Frequently when he was at home, he would come out in response to Corky's barking and would restrain the dog in order to permit whoever was there to cross the yard in peace.

■ We find that the testimony of these witnesses and the inferences to be drawn therefrom presented sufficient contrary evidence of permission to rebut appellees' presumption of adverse user. The frequent face-to-face encounters with members of the Meyers family and their garbage presented the Chaconas family with equally frequent opportunities to object to this use of their land; yet they never did. Instead, they engaged in friendly conversation and, further, affirmatively facilitated the Meyers' passage by restraining their vociferous pet. *See, e.g., Stubblefield v. Osborn,* 149 Neb. 566, 31 N.W.2d 547 (1948) (friendly conversation with landowner during claimant's use was one factor indicating that use was permissive). Accordingly, we hold

that appellant sustained his burden of presenting evidence contrary to appellees' presumption of adverse user. The trial court's finding to the contrary was plainly wrong. *See* D.C.Code § 17–305(a) (1981).

### IV

The court ruled in the alternative that appellees established by the preponderance of the evidence that a right-of-way existed across Lot 869. Implicit in this ruling was a finding that appellees proved by a preponderance of the evidence that their use was adverse, *i.e.,* under a claim of right.

Where based upon the assertion of a claim of right, "[t]he determination of adversity ... focuses essentially on factual manifestations of claimed ownership." *Aleotti v. Whitaker Brothers Business Machines, Inc., supra,* 427 A.2d at 921. "[A]dverse use must be established by circumstances which reflect a claim of right to a reasonably attentive owner." *Id.* "It is not sufficient that the claim of right exists only in the mind of the person claiming it. It must in some way be asserted in such manner that the owner may know of the claim." *LaRue v. Kosich,* 66 Ariz. 299, 303, 187 P.2d 642, 645 (1947) (emphasis removed) (quoting *Clarke v. Clarke,* 133 Cal. 667, 670, 66 P. 10, 11 (1901)). In this regard, it has been written that adversity is a state of mind, proof of which must rely "upon outward manifestations of the mental processes of the persons claiming the easement and the ones against whom it is claimed. This is primarily a fact problem, difficult of proof." *Hazek v. Greene,* 51 N.J.Super. 545, 553, 144 A.2d 199, 203–04 (1958).

■ Hence, where not established by a presumption of adversity, *see Kogod v. Cogito, supra; accord Baltic Investment Co. v. Perkins, supra* note 3, the question whether the use of another's land is under a claim of right, ripening into an easement by pre-

---

7. See also the testimony of Lois Meyers Vogel, daughter of Mr. and Mrs. Harry Meyers, admitting that the Chaconases were generally friendly people, with whom she personally was on friendly terms, and who frequently saw her as she crossed their yard.

scription, or is used as a mere neighborly accommodation, thereby remaining at most a license or permissive use, is one of fact to be determined by the trial court in light of the relation of the parties, their conduct, the situation of the property, and all the surrounding circumstances. *Aleotti v. Whitaker Brothers Business Machines, Inc., supra; accord Kammerzell v. Anderson,* 69 Wyo. 252, 240 P.2d 893 (1952); *Sachs v. Toquet,* 121 Conn. 60, 183 A. 22 (1936);[8] *Bernstein v. Dodik,* 129 Cal.App. 454, 18 P.2d 983 (1933); *see also* 2 THOMPSON ON PROPERTY § 344, at 225 n. 21 (1980 Repl.) (citing *Sachs v. Toquet, supra* ), § 350, at 284 ("The question whether a use was merely permissive, exercised under a mere license or whether it was adverse under a claim of right, is one of fact."). Our standard of review, therefore, is limited to determining whether the court's findings are plainly wrong or without evidence to support them. *Aleotti v. Whitaker Brothers Business Machines, Inc., supra,* 427 A.2d at 921; *see* D.C.Code § 17–305(a) (1981).

The sole testimony presented by appellees which arguably embraced the assertion of a claim of right by appellees to cross Lot 869 was articulated by Bertram Meyers. Mr. Meyers testified that in 1978 he requested that the Chaconas family remove a fig tree which had grown up in front of, and ultimately blocked, the gate which led from Lot 868 (the Meyers' backyard) to Lot 869 (the Chaconas' backyard). He stated further that "they" (presumably the Chaconas family) did remove the tree.

Theodore S. Chaconas, testifying on appellant's behalf, admitted receiving a letter to this effect from Bertram Meyers but stated that he did not respond to it. The letter, he stated, was received concurrent to the construction by appellant's tenants of a restaurant on Lot 869. With excavation for that purpose by the tenants, the fig tree as well as all the other bushes and trees in the area apparently were removed.

Assuming that this request by Betram Meyers, on its face, constituted an assertion of a claim of right by appellees to continue to cross appellant's property, the testimony of Theodore Chaconas effectively clarified appellant's apparent acquiescence to that claim. At best, the question whether the removal of the offending tree evidenced appellant's acquiescence to appellees' alleged claim of right remained ambiguous. *Cf. Aleotti v. Whitaker Brothers Business Machines, Inc., supra,* 427 A.2d at 921–22 (reasonable to infer that landowner acquiesced to the use by claimant of a right-of-way where obstruction of the way was removed shortly after objection by claimant, and other evidence supported the inference of an assertion of a claim of right). Our independent review of the record has produced even less support for appellees' claim of adverse use.[9]

▮ As discussed earlier, the testimony established that the relationship between the Meyers and the Chaconas families was friendly and their conduct inter se was neighborly. Further, witnesses for both sides testified that Corky, the family dog, often impeded free crossing of the property and that members of the Chaconas family actively facilitated passage of their property by restraining their dog. This atmosphere of neighborly accommodation evidences more than mere acquiescence. We conclude that it demonstrates the Chaconas family's tacit approval of, and implied permission for, the Meyers' use of their land, granted *sub silentio* at each encounter. *See*

8. In *Sachs,* the court stated: "Where there is neither proof of an express license or permission from the landowner, nor of an express claim of right by the person using the way, the character of the use, whether adverse or permissive, is to be determined from the circumstances of the parties and the nature and character of the use." 121 Conn. at 66, 183 A. at 25.

9. In fact, the only other testimony relative to a claim of right by the Meyers to cross the Chaconas' property was against appellees. Theodore S. Chaconas testified that during the late 1940's through the late 1950's no member of the Meyers family with whom he had contact ever asserted that they had a right to cross the Chaconas' land.

*Umhau v. Bazzuro, supra,* 76 U.S.App.D.C. at 396, 133 F.2d at 358 (dicta);[10] *accord Finley v. Botto,* 161 Cal.App.2d 614, 327 P.2d 55 (1958); *Norwick v. Edelman,* 204 Misc. 915, 128 N.Y.S.2d 312 (1953); *Stubblefield v. Osborn, supra; LaRue v. Kosich, supra.*[11] Arising out of friendship and neighborly accommodation, appellees' use of Lot 869 could not ripen into an easement by prescription.[12]

Accordingly, we hold that appellees failed to carry their burden of establishing by the preponderance of the evidence the existence of a prescriptive easement across the northern portion of appellant's land. The trial court's contrary finding was without evidence to support it. *See* D.C.Code § 17–305(a) (1981).

*Reversed and remanded for entry of judgment in accordance with this opinion.*

---

10. The circuit court in *Umhau* quoted with approval *Stewart v. Andrews,* 239 Ill. 186, 87 N.E. 864 (1909), stating in part:

> [A] user of the type here involved, being a mere neighborly act, with no intent on the part of ... [appellees] to claim adversely, and no intent on the part of the owner to surrender, could not ripen into an easement even though no permission had ever been asked.

76 U.S.App.D.C. at 396, 133 F.2d at 358.

11. *See also* 2 THOMPSON ON PROPERTY, *supra,* § 335, at 143, and cases cited therein, reporting that "[t]he modern tendency is to restrict the right of one to acquire a prescriptive right-of-way whereby another, through a mere neighborly act, may be deprived of his property by its becoming vested in the one whom he favored."

12. As stated by Justice McKenna in *District of Columbia v. Robinson,* 180 U.S. 92, 100, 21 S.Ct. 283, 286, 45 L.Ed. 440 (1901):

Under a different rule licenses would grow into grants of the fee and permissive occupations of land become conveyances of it. "It would shock that sense of right," Chief Justice Marshall said in *Kirk v. Smith,* 9 Wheat. [241] 286 [6 L.Ed. 81], "which must be felt equally by legislators and judges, if a possession which was permissive, and entirely consistent with the title of another, should silently bar that title."

*See also LaRue v. Kosich, supra,* 66 Ariz. at 303, 187 P.2d at 645, in which the court stated:

If any party who is allowed by silent permission to pass over the lands of another, nothing being said as to any right being claimed, after ... [the statutory period], without showing that he ever communicated such claim in any way to the owner, can thus gain title by prescription, it would be a blot upon the law.