Samad HEFAZI and Helga Metz–
Hefazi, Appellants,

v.

Michael STIGLITZ, Appellee.

No. 03–CV–550.

District of Columbia Court of Appeals.

Argued Sept. 23, 2004.
Decided Dec. 2, 2004.

Robert S. Catz for appellants.

H. Patrick Stringer, Jr., with whom Andrew Janquitto was on the brief, for appellee.

Before WAGNER, Chief Judge, TERRY and REID, Associate Judges.

REID, Associate Judge:

Appellants Samad Hefazi and Helga Metz–Hefazi ("the Hefazis" or "appellants")[1] appeal from the trial court's order granting summary judgment in favor of appellee Michael Stiglitz ("Mr. Stiglitz" or "appellee") in an easement/party wall property matter, and the denial of certain of their motions, including their motion to vacate the trial court's summary judgment order. We affirm.

## FACTUAL SUMMARY

The record on appeal shows that three properties in the Northwest quadrant of the District of Columbia—2803 and 2805 Que Street, and 1600 28th Street—"were originally a single unit, built around the turn of the century, with a single heating unit and a single water supply." The single unit was "jointly owned by Mr. and Mrs. Guy Wiggins." Eventually the property was subdivided and one person, Ed-

---

1. The Hefazis' name also appears in the record as "Hafezi." Both the complaint and the third-party complaint filed in this matter used the spelling "Hefazi."

ward L. Beach, acquired all of the subdivided property from Mr. and Mrs. Wiggins on February 20, 1976. At the time of Mr. Beach's purchase, a wall, whose date of construction apparently is unknown, was located between the 2803 Que Street property and the 28th Street property, and there was a window in the west wall of the 28th Street property. After his purchase of the subdivided properties, Mr. Beach constructed two additional windows in the wall. He operated the subdivided property as a single unit, although he rented the subdivided units to different tenants. In a letter of August 30, 1988 to the Condominium and Cooperative Branch of the District government, Mr. Beach noted that "there is a common basement, with only one entry through the rear of 2803 [Que Street], and it is open, without separations, from the east wall of 1600 [28th Street] to the west wall of 2805 [Que Street]."

On September 25, 1989, Mr. Beach sold all of the subdivided property to Mr. and Mrs. Edwin Lim and Mr. and Mrs. Clarence Chiang. The Chiangs acquired 2805 Que Street. Subsequently, the property at 2803 Que Street was sold to the Hefazis on June 15, 1999, and they also purchased the 28th Street property on September 28, 2000. The Hefazis sold 2803 Que Street to James and Patricia Peva on September 29, 2000. In connection with that sale, the Pevas executed a "basement easement" in favor of the Hefazis on September 29, 2000. The basement easement "grant[ed] and encumber[ed] [2803 Que Street] with an easement for the benefit of the owners of the [28th Street property], and their respective successors, heirs and assigns

for the purpose of permanently keeping [the single water heater and furnace vents] as joint service to [both properties]." [2] "[A] circular chimney flue" which "is entirely on the [2803 Que Street] property" services the 28th Street property furnace. Later, the Pevas sold 2803 Que Street to Mr. Stiglitz.

Mr. Stiglitz decided to make improvements on his property. Three general building permits were issued to him by the District of Columbia government: one on October 19, 2001 for interior work on his home; another on October 9, 2002 to replace windows and doors on his home; and a third permit on January 14, 2002 for an addition at the rear and side of his property. An attorney for the appellants sent a letter to the District of Columbia Department of Consumer and Regulatory Affairs ("DCRA") on December 19, 2001, objecting to work relating to the west wall of the Hefazis' property. The attorney complained that the proposed work "[n]ot only will ... entail attaching to [the Hefazis'] exterior wall, [but] it also would block the window which currently exists on that side, as well as block a basement area and deny access to the chimney for repairs." The attorney stated the appellants' "object[ion]" to "the granting of any permit which would close off or materially affect the existing window or basement area, or access to the chimney." DCRA temporarily stopped the renovation work on Mr. Stiglitz' property. In a letter dated February 15, 2002, DCRA responded to the attorney's letter of December 19, 2001, indicating in part that the enclosure of the window was proper.[3] On February 16,

**2.** The basement easement specified that: "water heater and furnace vents in the basement of the [28th Street property] join together with the vents of the [Que Street property], form a single vent, which crosses the basement of the [Que Street property], and, outside the basement of the [Que Street proper-

ty], vertically attaches to the party wall of the [Que Street property], thus providing service to both [properties]."

**3.** The February 15, 2002 letter from the DCRA Administrator advised:

2004, appellants' counsel again wrote to DCRA, taking issue with DCRA's conclusion that the window in the west wall could be sealed under the District of Columbia Building Code ("BOCA"). Appellants' counsel contended that the BOCA Code did not permit such enclosure of Mr. Stiglitz' renovation project for the following reason:

Unlike other properties to which the BOCA Code may apply regarding openings in party walls, it appears that the opening in this particular party wall was created when the properties were owned by a single owner and more than 26 years ago. Accordingly, at the time of its construction, the opening was not installed in a party wall, but rather as part of a larger, single-family home, with a single owner, built on contiguous lots. I respectfully suggest that this construction and configuration removes this particular party wall from the BOCA provisions and prohibits the closing of the window in question without the express consent of [the Hefazis], which has not been granted.

The letter to DCRA described the window as "a standard double-sash window providing light into the bedroom behind it," and argued that since the west wall "was not a 'party wall' at the time of installation ... [it] should, and must, be 'grandfathered.'"

On March 12, 2002, appellants filed a lawsuit against Mr. Stiglitz concerning their alleged right of physical access to a chimney flue through an easement allegedly running with the land, and the sealing of a window in the west wall dividing the property of the Hefazis and that of Mr. Stiglitz. The Hefazis maintained that the window "has been in continuous and uninterrupted use for more than 26 years," and "has provided air, light and ambiance to a first floor/sub-basement tenant apartment continuously since on or before February 20, 1976." When Mr. Stiglitz constructed an addition to his house some time around 2002, he enclosed the chimney flue, thus cutting off physical access by the Hefazis, and he sealed the window. Appellants alleged that in doing so, he damaged their property. The complaint also alleged that "[t]he West exterior wall of Hefazi Property extends beyond the East exterior wall of 2803 Que Street approximately 30 feet."

Although appellants attached a September 20, 2000 location survey of 1600 28th Street, N.W. to their complaint, no boundary survey was included which identified the respective boundaries of the Stiglitz and Hefazi properties, nor any plat or survey reflecting the original single unit property owned by the Wiggins prior to the subdivision. In his answer to the complaint, Mr. Stiglitz "admit[ed] that the west exterior wall of the Hefazi property

---

In regards to the enclosure of the existing window on the property line, pursuant to Chapter 7, Section 705.3 and Table 705.3 of the 1996 BOCA Building Code, openings located within 0 ft. to 3 ft. of the property line are not permitted. Therefore, the enclosure of the existing window on the property line is in compliance with the current codes.

With respect to Mr. Stiglitz' proposed addition at the rear and side of his residence, DCRA Administrator's letter stated:

Building Permit No. B441868 was issued as a matter of right to satisfy the current Zoning and Building Regulations. At the time

the permit application was approved, *no easements on the property had been submitted to this office by the applicant.* Upon review of the easement faxed to me on 2/6/02, it appears that the vent pipe in question was agreed to be utilized by both properties, 280[3] Q Street, NW and 1600 28th Street, NW. However, legally, I am not in a position to identify the parameters governing both parties as it relates to the utilization and enclosure of the vent pipe or the chimney.

DCRA's Administrator promised a thorough investigation of "work being performed on [Mr. Stiglitz'] property."

extends beyond the east wall of 2802[sic] Q Street, but denie[d] that it is 30 feet."

In Count I of their complaint, the Hefazis sought a declaratory judgment "establishing the existence and extent of the easement, and declaring their rights with respect to the window in question." Count II alleged nuisance due to an "intentional, unreasonable, negligent and/or reckless" "invasion of Plaintiffs' interest in the private use of their land and/or the easement." Count III claimed trespass in that "Defendant[ ] and or [his] agents, contractors, or assigns have entered Plaintiffs' property and/or the easement and have caused a thing or third person to enter said property and/or easement, and/or failed to remove from the easement things they were under a duty to remove." Count IV alleged "obstruction and/or interference with Plaintiffs' easement and/or property." And, Count V claimed intentional infliction of emotional distress because "Defendant's action of obstructing Plaintiffs' use and enjoyment of the easement, after Plaintiffs' objection thereto, and the sealing of the window, despite Plaintiffs' objections thereto, constitute extreme and outrageous conduct which intentionally or recklessly caused Plaintiffs severe emotional distress." In addition the

Hefazis sought a preliminary injunction, designed to preclude both interference with their alleged access to the chimney flue, and the sealing of the window in the party wall. They also requested compensatory and punitive damages.

Subsequently, around February 2003, Mr. Stiglitz filed a motion for summary judgment, claiming that the chimney flue issue had been resolved by the parties; asserting that the Hefazis had acquired no easement of air and light by implication or prescription; indicating that the Hefazis failed to show outrageous conduct in support of their claim for intentional infliction of emotional distress; and contending that the Hefazis were not entitled to punitive damages as a matter of law. Attached to Mr. Stiglitz' motion were three exhibits: the September 20, 2000 location survey of 1600 28th Street, N.W. (the Hefazis' property), the February 15, 2002 letter from DCRA Administrator pertaining to permits for the renovation and construction work on Mr. Stiglitz' property, and documents showing work performed on the chimney flue. Mr. Stiglitz filed with his motion for summary judgment "a statement of material facts as to which there is no genuine issue." [4] The Hefazis filed no opposition to the motion for summary

**4.** The statement of undisputed material facts included the following:

1. The parties in this action live in adjacent townhouses at the corner of Q Street, N.W., and 28th Street, N.W. with a common property line and a common party wall running along the property line to demarcate the boundary between the two houses. *See* Location Survey [of September 20, 2000].
2. A single chimney flue served as a vent from the furnaces in the basements in both the Hefazi and Stiglitz houses. The chimney flue, which is marked by a small circle adjacent to the common wall on the property survey, is located on the Stiglitz property running vertically up the common wall.....

3. One window in question served a first floor apartment in the Hefazi house that faced the small space between the Plaintiffs' and Defendant's properties and one window was located below ground in the basement of the Hefazi house looking into a sub-surface stairwell ....
4. The District of Columbia issued a building permit to Defendant in January 2002 for the construction of the addition to his house, which permitted addition included the enclosure of the chimney flue and the sealing of the windows.....

The last two undisputed facts summarized and quoted from the DCRA Administrator's letter of February 15, 2002, and pointed out the parties' agreement to resolve the chimney flue issue.

judgment, even though the trial court granted them additional time to respond.

In April 2003, the Hefazis and Mr. Stiglitz filed a joint motion to add a third-party defendant, the contractor who performed the work on the addition to Mr. Stiglitz' property. On April 11, 2003, the trial court docketed an order granting "Plaintiffs ... leave to file an Amended Complaint and the Defendant ... leave to file a Cross–Claim against the third-party contractor...." However, in mid-April 2003, Mr. Stiglitz filed a "Third Party Complaint against Construction Development, Inc." He alleged that any damage done to the Hefazis property was the fault of the construction company, and should the Hefazis recover any damages against him, the same amount should be awarded in his favor against the construction company. Later, on April 21, 2003, the Hefazis moved to stay proceedings on the motion for summary judgment in light of the court's ruling that an amended complaint could be filed against the third-party contractor. Notwithstanding the Hefazis' motion to stay, the trial court granted Mr. Stiglitz' motion for summary judgment and docketed its order on April 23, 2003. This order noted that Mr. Stiglitz' motion was "unopposed" and granted the motion "for good cause shown," without further explanation. Simultaneously the court "denied without prejudice, but as moot," the Hefazis motion to stay proceedings on the mo-

tion for summary judgment, pointing out the Hefazis' failure to respond to the motion for summary judgment, even after being granted additional time in which to respond. The Hefazis' May 2003 motion to vacate the order granting summary judgment (which was filed along with an amended complaint) and opposed by Mr. Stiglitz was denied, as was their motion to reconsider the order denying their motion to stay proceedings on the summary judgment motion.[5] The Hefazis filed a timely notice of appeal.

## ANALYSIS

 Appellants challenge the trial court's orders granting summary judgment in favor of the appellee, and denying their motions to stay proceedings on the summary judgment motion, to vacate the summary judgment order and to reconsider the order denying the motion to stay proceedings on the summary judgment motion. We review the motions to stay, vacate, and reconsider for abuse of discretion. *See Lynch v. Meridian Hill Studio Apts., Inc.*, 491 A.2d 515, 517 (D.C.1985) (citation omitted). Since the trial court's order granting the joint motion of the parties to add a third-party contractor did not alter the original time frame for filing and responding to a motion for summary judgment; and given the failure of the appellants to oppose the summary judgment

---

5. In the May 16, 2003 order denying the Hefazis' motion to vacate order granting summary judgment, the trial court stated in a note: "Even in the motion to vacate, plaintiffs fail to oppose the motion for summary judgment or to indicate any opposition is forthcoming." In both their motion to vacate summary judgment and their motion to reconsider order denying motion to stay proceedings on motion for summary judgment, the Hefazis referenced the trial court's order of April 10, 2003 granting the joint motion of the parties for leave to add a third-party defendant. That order specified "that the Plain-

tiffs are granted leave to file an Amended Complaint and the Defendant is granted leave to file a Cross–Claim against the third-party contractor within 10 days from the date of this Order." Defendant Stiglitz, rather than the Hefazi plaintiffs, filed a timely third-party complaint on April 18, 2003. The Hefazis did not file their amended complaint against Mr. Stiglitz and the third-party construction company until May 6, 2003. Later, in their May 7 motion to reconsider, they contended that their "amended complaint" should have been styled as a third-party cross-claim.

motion, even after being granted additional time to do so; and in light of the appellants' failure to file an amended complaint within the court-ordered time frame, we see no abuse of discretion in the denial of appellants' motions to stay, vacate, and reconsider.

▪ *Lynch, supra,* makes it clear, however, that although a trial court has exercised discretion properly in denying a motion to vacate summary judgment, "it is also important to confirm, on the basis of the pleadings, affidavits, and other papers, whether the trial court's summary judgment order[ ] [itself is] appropriate." *Id.* at 520 (citing Super. Ct. Civ. R. 56(e)).[6] And as we said in *Milton Props., Inc. v. Newby,* 456 A.2d 349, 354 (D.C.1983), "[e]ven if an unopposed motion for summary judgment is deemed to establish that no genuine issue of material fact exists, the court must still review the pleadings and other papers to determine whether the moving party is legally entitled to judgment." *Id.* at 354 (citations omitted). In light of this legal principle, we review the grant of summary judgment to appellee *de novo, see Joyner v. Sibley Mem. Hosp.,* 826 A.2d 362, 367 (D.C.2003), to make certain that the trial judge did not "simply deem[ ] [the summary judgment motion as] conceded." *Milton Props., supra,* 456 A.2d at 354. Consequently, we now turn our attention to the two issues that were the subject of the summary judgment motion.

### The Chimney Flue Vent Issue

▪ Appellants argue that their property "ripened into a prescriptive easement for perpetual and complete physical access to the chimney flue located on [appellee's] property" and their access to the flue was wrongfully cut off by appellee. They also

maintain that "an access easement [to the chimney flue was created] by express grant" as reflected in a "written contract," and that their access to the chimney flue has been "blocked." Appellees contend that the chimney flue issue was resolved by agreement of the parties and that, at any rate, appellants "have [not] been deprived of the service of the chimney flue pipe by Stiglitz's addition [to his property]." They argue that "[n]either the language of the express grant for joint service nor common sense implies that the Hefazis must have an unlimited right of 'perpetual and complete physical access to the chimney flue.' "

The record contains a document entitled "basement easement" signed on September 29, 2000 by the Pevas, purchasers of the 2803 Que Street property from the Hefazis. By that basement easement, the Pevas "grant[ed] and encumber[ed] [the 2803 Que Street property] with an easement for the benefit of the owners of [the 1600 28th Street property], and their respective successors, heirs and assigns for the purpose of permanently keeping the said vent [that is, the chimney flue vent] as joint service to [both properties]." The document does not mention physical access to the chimney flue. In addition, the record supports Mr. Stiglitz' position that the chimney flue issue was resolved by agreement of the parties when both the Hefazis and Mr. Stiglitz agreed to pay for work on the basement boiler and water heater vent. Mr. Stiglitz' "Statement of Material Facts as to which There is No Genuine Issue" contains two paragraphs relevant to the chimney flue vent:

2. A single chimney flue served as a vent from the furnaces in the basements in both the Hefazi and Stiglitz houses.

---

6. Super. Ct. Civ. R. 56(e) provides, in part, that if there is no response to a summary judgment motion, "summary judgment, if appropriate, shall be entered [against the adverse party]."

The chimney flue, which is marked by a small circle adjacent to the common wall on the property survey, is located on the Stiglitz property running vertically up the party wall . . . .

6. The parties have reached an agreement with regard to the chimney flue, in which they agreed to modify and modernize the flue and share the cost of these improvements. The work has now been completed. *See* the letter of Plaintiff's attorney, dated November 1, 2002, attached to the invoice of John C. Flood, Inc., and the Flood company's release of Defendant . . . .

The letter from the Hefazis' attorney "confirm[ed] that the chimney flue work has been completed . . . [,]" and requested payment of $3,200.00 from Mr. Stiglitz.[7] The Flood company documents were attached to the letter. In light of these record documents supporting Mr. Stiglitz' statement of undisputed material facts, which the trial court undoubtedly considered, and in the absence of any counter statement filed by the Hefazis in opposition to the motion for summary judgment, judgment as a matter of law on the chimney flue vent issue was proper. Indeed, in their reply brief, the Hefazis acknowledge that "[t]he Defendant was finally persuaded to authorize the repair, and the Plaintiffs paid the agreed one-third of the cost." Their further assertion that "[a]t no time did the Plaintiffs agree to the enclosure of the chimney flue," is of no moment because the "basement easement" that was granted to them by the Pevas did not purport to prohibit the enclosure of the chimney flue. It is undisputed that the chimney flue continues to provide service to appellants' property, and no facts of

record show that they have been denied access to it.[8]

### *The Party Wall Window Issue*

In their main brief appellants contend that Mr. Stiglitz "unilaterally built a 'party wall' as a 'divisional wall' on the West side of the Hefazi Property without the prior written consent of the Plaintiffs." They claim that Mr. Stiglitz trespassed and encroached on their property to build a "party wall" and that "party wall" constituted a "taking of private property for private use" because:

It is clear that the "party wall" was built by Defendant Stiglitz to squeeze every possible square inch out of the remodeling and expansion of his home to his absolute boundary line. This could be accomplished only with a "party wall" as there would not have been sufficient space between the adjoining properties for the construction workers to build a "dividing wall" to the outer limits of the Stiglitz Property boundary line.

Furthermore, the appellants argue that they acquired "a prescriptive easement which ripened no later than 1991 . . . ." In their reply brief they state:

Appellants' brief makes no equitable claim for an easement for air and light. The facts here are simply these: the Plaintiffs own the West wall of their building, which has a bedroom window on it; the Defendant, in order to build a new two-story addition at the rear of his property, built a "party wall" on the Plaintiffs' West wall, forever sealing Plaintiffs' bedroom window . . . .

Of course, the fact that the Plaintiffs' and the Defendant's properties historically shared a partial "party wall" did

---

7. The contract price for the work was $4,800.00; the Hefazis paid $1,600.00 of that amount.

8. Appellee states in his brief that if the Hefazis "need specific access to the flue, they will have access."

not give the Defendant the right to extend at will the length of the "party wall" several more yards north on the "West wall" of the Plaintiffs' Property, which had a bedroom window on it . . . .

They also maintain that they acquired an "easement running with the land" or an implied easement that "vested on or before February 20, 1991" and which precluded the sealing of the window or windows by Mr. Stiglitz.[9] As the Hefazis contend in their main brief:

The parties are adjoining neighbors in Georgetown who shared a "party wall" through the front portion of their common property line. A rear portion of Plaintiffs' house extended beyond Defendant's house, on the property line. That rear portion of Plaintiffs' house contained three windows and a doorway which provided the only access to the lower basement level of Plaintiffs' property. An access easement to the lower basement level of Plaintiffs' property was acquired by prescription running with the land on or before February 21, 1991, access which has been open, notorious and uninterrupted since at least February 20, 1976.

In paragraphs 8 and 9 of their complaint the Hefazis stated:

8. Prior to Beach's purchase of the Hefazi and Stiglitz Properties [in] 1976, there existed a window in the West wall of the Hefazi Property, which window has been in continuous and uninterrupted use for more than 26 years.

9. The window has provided air, light and ambiance to a first floor/sub-basement tenant apartment continuously since on or before February 20, 1976.

As he did in his summary judgment motion, appellee argues that "American

law does not recognize . . ." "an irrevocable easement by implication or prescription for the air and light that once passed, before the addition was built, through the open portion of Stiglitz' property into the windows." Moreover, appellee asserts that DCRA found no violation in the sealing of the window located on the property line; that Mr. Stiglitz did not "erect[ ] a party wall encroaching on the Hefazi property"; nor did he construct any "new common wall or new party wall"; and that "[b]y extending the new addition on his property up to the preexisting party wall, in which he himself enjoyed an ownership interest, [Mr.] Stiglitz cannot have trespassed on the Hefazis' parcel." Furthermore, Mr. Stiglitz contends that his conduct was not "outrageous and extreme" as required to be shown to prove intentional infliction of emotional distress. And, Mr. Stiglitz also argues that the chimney flue issue was resolved and that the Hefazis "continue to enjoy . . . the full benefit of the [chimney flue] easement."

 "The law governing the creation of prescriptive easements is clear." *Chaconas v. Meyers*, 465 A.2d 379, 381 (D.C. 1983). To establish the existence of a prescriptive easement, the appellants must show that their use of the appellee's land was "open, notorious, exclusive, continuous and adverse," and that it was "for the statutory period of fifteen years." *Id.* at 381 (citing D.C.Code § 12–301(1) (1981)) (other citations omitted). Moreover, the "burden of establishing [this] use[ ] by a preponderance of the evidence . . . rests upon the claimant." *Id.* at 381–82 (citing *Baltic Investment Co. v. Perkins*, 475 F.2d 964, 154 U.S.App. D.C. 380 (D.C.Cir.1973)).

 A use is considered to be adverse "if [it is] not accompanied by any recogni-

---

**9.** The Hefazis at times focus on one window in the west wall, and at other times mention three windows and a basement access, but their major argument appears to center on

one window in the west wall that was sealed during Mr. Stiglitz' construction of the addition to his home.

tion, in express terms or by implication, of a right in the landowner to stop such use now or at some time in the future." *Chaconas*, 465 A.2d at 382 (citations omitted). *Accord* RESTATEMENT OF PROP.: ADVERSE USE § 458 (1944) ("A use of land is adverse to the owner of an interest in land which is or may become possessory when it is (a) not made in subordination to him, and (b) wrongful, or may be made by him wrongful, as to him, and (c) open and notorious."). Furthermore, "[t]he concept of adverse use includes ... the ingredient that the conduct is either inherently wrongful or wrongful at the election of such potential servient owner" in this case, Stiglitz. 4–34 POWELL ON REAL PROPERTY § 34.10[2][d] (2004). As such, "American courts have refused to allow the acquisition by prescription of easements of light and air ...." *Id.*

 Here, the appellants cannot demonstrate that they have acquired an easement by prescription. In essence, they assert that they have acquired a *negative* easement—the right to prevent appellee from using his property in such a manner as to affect their use and enjoyment of their own property.[10] However, it is well settled that a *negative* easement cannot be created by prescription. *Id.* To the contrary, a negative easement can only be created by an express grant. *See* LEONARD A. JONES, A TREATISE ON THE LAW OF EASEMENTS § 573 (2003) ("An easement in the unobstructed passage of light and air cannot be acquired by prescription."). *Accord* RICHARD POWELL, POWELL ON REAL PROPERTY (ABRIDGED) § 413 (1980) ("American courts have wisely refused to allow the acquisition by prescription of easements of light and air ..."). In fact, this "is the rule now established in all the American States, with a single exception, [Delaware] ..." JONES, *supra* at § 573. This rule flows from the basic principle that the "actual enjoyment of the air and light by the owner of the house is upon his own land only," and that "the owner of the adjoining lands has submitted to nothing which actually encroached upon his rights ..." *Id.* Thus, "[o]ne may obstruct his neighbor's windows at any time" and "[n]o action can be maintained for obstructing a view ..." *Id.* at § 579, 583. *Accord* TIFFANY ON REAL PROPERTY § 763 (3d ed.)

 In addition, the appellants cannot demonstrate that their use of the "party wall" windows was for the statutory period of fifteen years, as required by D.C.Code § 12–301(1) (1981).[11] As a gen-

---

10. Nothing in the record establishes that appellee has constructed anything on appellants' property. There is no boundary survey showing that any part of the rear and side addition constructed by Mr. Stiglitz encroaches on the Hefazis' property; nor is there any plat or survey in the record confirming, as alleged in the appellants' complaint, that "[t]he West wall of Hefazi Property extends beyond the East exterior wall of 2803 Q Street approximately 30 feet." Moreover, the Hefazis seem to recognize that the addition to the Stiglitz home does not cross the boundary of his property by saying in their main brief: "It is clear that the 'party wall' was built by Defendant Stiglitz to squeeze every possible square inch out of the remodeling and expansion of his home to his absolute boundary line." To the extent that the "party wall" allegedly constructed by Mr. Stiglitz constituted "a taking of [their] private property for private rather than public use," as the Hefazis argue in their main brief, they have made no such showing on the record before us.

11. Although the parties at time have referred to the west wall as originally constructed prior to 1976 as a "party wall," it could not have been a party wall prior to 1989 since the property on which it was built was a single unit owned first by a husband and wife, the Wiggins, and then by Mr. Beach. "A party wall is a wall that is built with the objective of supporting, or separating, adjoining properties." Matthew Bender, A PRACTICAL GUIDE TO DISPUTES BETWEEN ADJOIN-

eral principle, a property owner cannot hold an adverse interest against him or herself. *See* Jones, *supra* at § 166 ("No easement by prescription can commence or exist while the dominant and servient estates are held by one and the same person."); 4–34 POWELL ON REAL PROPERTY § 34.02 (2000) ("While an easement is clearly an 'interest in land' for the creation of which compliance with the Statute of Frauds is requisite, it is equally clearly never an 'estate in land[,]' [thus] [t]he requirement that the servient tenement be in the possession of some person other than the easement owner ...."). In order to establish the existence of a prescriptive easement, the claimant must demonstrate his or her use of the property is "adverse." However, a use cannot be adverse where the user has full legal title to the underlying property, and consequently, the ability to use the land in whatever legal fashion he or she sees fit. JONES, *supra* ("If the dominant and servient tenements are the property of the same owner, the exercise of the right, which in other cases would be subject to an easement, is, during the continuance of his ownership, one of the ordinary rights of property only, which he may vary or determine at his pleasure without in any way increasing or diminishing those rights."). To fall within the province of prescriptive easement law, the "dominant and servient tenements must, therefore, belong to different persons." *Id.*

Recognizing this fact, it becomes clear that "the time for acquiring by prescrip-

tion does not run while the dominant and servient estates are in the occupation of the same person." In this case, the Hefazi and Stiglitz properties were owned by the Wiggins until February 20, 1976, and even though the property subsequently was subdivided and sold, it was owned by a single person, Mr. Beach, until 1989. Therefore, the fifteen-year statutory period could not begin to run until the property was sold as subdivided property to separate owners by Mr. Beach on September 25, 1989. At the earliest, then, the statutory period would expire on September 25, 2004—exactly two days *after* oral arguments in this case. Accordingly, the appellants cannot show that they acquired an easement by prescription.[12]

We turn now to the question as to whether the appellants can establish their acquisition of an easement by implication with respect to the West wall window that was sealed as a result of Mr. Stiglitz' addition. This court has recognized implied easements in some circumstances. *See e.g., Carrollsburg v. Anderson,* 791 A.2d 54, 61 (D.C. 2002). Generally, there are two types of implied easements, an implied grant, and an implied reservation. *See* JONES, *supra,* § 127 at 101–02. In essence the Hefazis contend that when they sold what ultimately became the Stiglitz property, they acquired an easement by implied reservation with respect to air and light flowing through the window in the west wall.

ING LANDOWNERS-EASEMENTS, Chapter 6 Party Walls, Scope, (the LEXISN exis Group 2003). "A party-wall is a dividing wall between two houses to be used as an exterior wall for each." *Jones, supra,* chapter XV, § 632 at 515. In addition, other than the Hefazis' assertion that Mr. Stiglitz constructed a party wall in 2002, nothing suggests that the wall involved in the addition to his property constituted a party wall. In fact, in their main brief the Hefazis quote part of the building permit issued for that addition; it is de-

scribed as "an addition at rear/side of existing residence: 2 story brick building exterior with 2 new windows. 2 French doors at rear of 1st floor ...."

12. *See* LEONARD A. JONES, A TREATISE ON THE LAW OF EASEMENTS § 166 (2003) ("[W]hen both tenements become vested in fee simple in the same owner, [this] operates as an extinguishment of all easements forever.")

The general rule is that "if the grantor intends to reserve any right over the tenement granted, it is his duty to reserve it expressly in the grant." JONES, *supra,* § 127 at 102. If there is no express reservation, and there is none in the case before us since the September 29, 2000 basement easement is absolutely silent about the west wall window, the general rule is that: "There is no implied reservation of an easement in case one sells a part of his land over which he has previously exercised a privilege in favor of the land he retains, unless the burden is apparent, continuous and strictly necessary for the enjoyment of the land retained." *Id.* § 136 at 111. But the general rule contains an exception which arguably is applicable here: if the easement "is reasonably necessary to the enjoyment of the estate ... retained by the grantor, and the easement is in fact annexed to it and in use at the time of the grant, and is, as well, open, apparent and continuous," an easement by implication may be recognized. *Id.* § 154 at 127. However, "the term 'necessary' is to be understood as meaning that there could be no other reasonable mode of enjoying the dominant tenement without this easement." *Id.* § 156 at 130.

Here, as a matter of law, there is no showing on this record that the burdening of the 2803 Que Street property with an implied reservation of light and air with respect to the west wall window was reasonably necessary to the Hefazis' enjoyment of their 28th Street property. The record contains virtually no information about the value of the window in the west wall in relation to the value and use of the 28th Street premises. Paragraph 9 of the Hefazis complaint alleges that the window in the west wall "has provided air, light and ambiance to the first floor/sub-basement tenant apartment continuously since on or before February 20, 1976." The letter which the Hefazis' attorney wrote to DCRA on December 19, 2001 states, "there is one first floor window in [the west] wall of my clients' property...." And, the attorney's letter of February 26, 2002 to DCRA advises that "there are three registered apartments" at the 28th Street property, but there are no details about any of these apartments, including the first floor/sub basement apartment. Without such details as the amount of rent the apartments generate, any reduction of rent that would result from the sealing of the west wall window, the lighting conditions in the first floor/sub basement apartment, or the futility of trying to reconfigure the apartments to take into consideration the sealing of the west wall window, the trial court could not have concluded that the Hefazis acquired an implied reservation of air and light in the west wall window at the time they conveyed the 2803 Que Street property. Thus, we are satisfied that the record in this case, which the trial court undoubtedly reviewed prior to deciding Mr. Stiglitz' motion for summary judgment, did not support the Hefazis' assertion that they had either an easement by prescription or an implied easement.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*