# FRIZZELL *v.* MURPHY.

APPELLATE PRACTICE; EJECTMENT; EASEMENTS; IMPLIED GRANTS:

1. An appeal in an action at law is irregular and in strictness should not be entertained where the record contains no bill of exceptions, but only an agreement as to the facts by the parties, by their respective attorneys, and a stipulation to submit the questions in controversy upon such agreement.

2. Ejectment cannot be maintained for one inch of ground occupied by one of the walls of a house which to that extent encroaches upon the adjoining lot, as R. S. D. C., Sec. 482, provides a remedy other than ejectment where a wall encroaches less than seven inches on an adjoining lot.

3. *Quære,* whether ejectment or an action for a nuisance is the proper remedy of the owner of a lot over which there overhangs or projects part of the second story of a house on the adjoining lot.

4. Where the owner of two adjoining lots, having built a house on each, one of which is so built that its second story projects over the adjoining lot three or four feet, conveys the lot on which such house stands, with the improvements, easements, rights and privileges thereto appertaining, neither he, nor any one claiming under him, can thereafter successfully assert a claim to have the projection removed, nor maintain an action against the owner thereof as for a nuisance.

No. 1048.   Submitted January 10, 1902.   Decided March 11, 1902.

HEARING on an appeal by the plaintiff from judgment of the Supreme Court of the District of Columbia, entered upon a verdict directed by the court in an action of ejectment.

*Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Walter A. Johnston* for the appellant:

1. It is claimed that the right to the use of this three feet six inches of lot 6 (second story) was granted the appellees

by the use of the word " appurtenances " in the deed to John Murphy, and the court below so held. Land can never be appurtenant to land. *McDonald* v. *Lumber Co.,* 28 Minn. 262–264; *Harris* v. *Elliott,* 10 Pet. (U. S.) 25. The term " appurtenances " carries with it no rights or interest in other lands of the grantor. *Barrett* v. *Bell,* 82 Mo. 110–113; *Frey* v. *Drahos,* 6 Nebr. 1.

2. Such right as claimed by the appellees could not have passed by the use of the words " ways, rights, or privileges;" nor did it pass by the use of the word " appurtenances." If it did not pass by the use of the word " appurtenances," did it pass by the use of the word " easements?" An easement has been defined to be a privilege, liberty, or advantage in land apart from the ownership in the soil, and is founded on a grant by deed or writing or upon prescription. Winfield on Words and Phrases.

3. It is not claimed as a right by prescription. To pass an easement in the three feet six inches of lot 6 it must be shown to be necessary to the enjoyment of lot 5 by the owner, otherwise it will not pass. *Humphreys* v. *McKissock,* 140 U. S. 314; Washburn on Easements, 161; *Woodhull* v. *Rosenthal,* 61 N. Y. 390; *Whitney* v. *Olney,* 3 Mass. 281–283; *Spark* v. *Hess,* 15 Cal. 186; *Jackson* v. *Yates,* 15 Johns. 447; *Riddle* v. *Littlefield,* 53 N. H. 509; *Grant* v. *Chase,* 17 Mass. 443; *Jackson* v. *Trulliger,* 9 Oreg. 398.

4. The use of this three feet six inches of the second story of building on lot 6 is not necessary to the enjoyment of lot 5 by the grantee, and is not such a right as would pass by the use of the word " easement " or of general words in the deed. Suppose the partition of the second floor had been extended by the common owner, Cronin, fifteen feet over upon lot 6 or there had been no partition at all, could the grantee of lot 5 claim an easement in the whole of the second floor, there being shown no necessity for the use thereof in connection with his grant? As the appellant was unaware of the arrangement of the partition and it was not apparent, and the appellee's grantee claimed an easement according to Daniel Murphy's testimony, it was the duty of the said Murphy to notify intending purchasers at the public

sale of lot 6. *Stevens* v. *Dennett,* 51 N. H. 324; *Bryant* v. *Manogue,* 15 App. D. C. 245.

5. Ejectment the proper remedy in such case. *Woodhull* v. *Rosenthal,* 61 N. Y. 390; *Steadman* v. *Smith,* 92 E. C. L. 1; *Chamberlin* v. *Donahue,* 41 Vt. 306; *Leprell* v. *Kleinschmidt,* 112 N. Y. 364.

*Mr. Michael J. Keane* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This is an action of ejectment brought by the present appellant, William J. Frizzell, against John Murphy, who, since the trial in the court below, has departed this life, and his heirs-at-law have been made parties to this appeal. The declaration is for a piece of ground in the city of Washington, known as and being a part of lot numbered 6 in McWilliams' subdivision of lots in square numbered 536, as said subdivision is recorded in the office of the surveyor of the District of Columbia, and bounded as follows: — and then follows a description by metes and bounds,— and after such description, it is alleged that in said piece of ground the plaintiff claims to own a fee simple, and of which he was lawfully possessed on the 5th day of March, 1898, when the defendant unlawfully entered the same and now unlawfully and unjustly detains the same from the plaintiff. The plea of not guilty was entered by the defendant.

It appears, by the very meager record before us, that the case was tried in the court below June 18, 1900, when a verdict was entered for the defendant, under the instruction of the court, as we are informed by the agreement of counsel. The record contains no bill of exception signed by the justice before whom the case was tried, but, by an agreement or stipulation entered into by the counsel of the parties seven months after the trial, it is agreed as a fact that the court instructed the jury to render their verdict for the defendant, and that the plaintiff noted an exception;

but there was no exception prepared and consequently none signed by the judge.

The case is therefore not properly before this court for review, for want of a bill of exception certifying to this court what was done and ruled on the trial below, and we should in strictness dismiss the appeal or enter the judgment below affirmed; for it is very clear we could not in justice to the court below proceed to review and reverse the judgment upon the state of the record as now presented.

But as the parties, by their respective attorneys, have entered into a stipulation as to the state of the title to the subject-matter of claim upon which the rights of the parties depend, and submit the question of contest upon such agreement, instead of a bill of exception, we shall, with a view of preventing further litigation, express our opinion upon the facts disclosed in the agreement, though the appeal is brought here in an irregular way.

By the agreement just referred to, it is stipulated and agreed, that William D. Cronin was, on the 1st day of August, 1894, the owner in fee of lots 5 and 6, in Clement McWilliams' subdivision of lots in square No. 536, and that his father, the prior owner, and from whom he obtained said property, had, during his lifetime, erected upon said lots two houses, and that the house upon lot 5 was so erected that the second story thereof extended over upon lot 6 some 3 feet 6 inches. It is also agreed that said William D. Cronin did, on the 3d day of August, 1894, convey lot 5 in McWilliams' subdivision of lots in square No. 536, as per plat in book "N. K.," folio 186, in the surveyor's office of this District, to Emmerich and Mackall, as trustees, to secure certain indebtedness, together with all and singular the improvements, ways, *easements, rights, privileges and appurtenances to the same belonging or in anywise appertaining*. It is also stipulated and agreed that said trustees, Emmerich and Mackall, conveyed said lot 5 in said subdivision of lots in square No. 536, together with all and singular the improvements, ways, *easements, rights, privileges*

*and appurtenances* to the same belonging, or *in anywise appertaining,* to John Murphy, on the 27th day of May, 1897.

It is further stipulated and agreed that the said William D. Cronin conveyed lot No. 6, in McWilliams' subdivision of lots in square No. 536, as per plat in book " N. K." in the surveyor's office, together with all the improvements, rights, ways, easements and appurtenances to the same belonging, on the 13th day of May, 1896, to Rawlings and Jones, trustees, to secure a debt, and it is further stipulated that said lot 6 in square 536, etc., was sold by a trustee under a decree of the Supreme Court of the District of Columbia, with the improvements, ways, easements, rights, privileges and appurtenances to the same belonging, to William J. Frizzell, on the 23d day of December, 1897, and was conveyed to him on the 28th day of February, 1898. It is also agreed that said Frizzel testified in his own behalf on the trial that he did not know at the time said lot 6 was sold to and purchased by him that the second story of the house on lot 5 extended over some three feet six inches upon lot 6, the lot purchased by him. It is further agreed that by a correct copy of the plat of the two lots, 5 and 6, it is shown that the second story of the house built on lot 5 extends out and projects over lot 6 three feet six inches, and that the west wall of said house upon lot 5 was one inch west of the line dividing said lots 5 and 6, and to that extent upon the plaintiff's lot 6.

This action of ejectment could not be maintained for the one inch of ground occupied by the west wall of the house on lot 5, claimed to belong to lot No. 6. Even assuming that, under the facts of this case, such claim could be made by the owner of lot No. 6, such claim is provided for by section 482 of the Revised Statutes relating to the District of Columbia, and that remedy is other than by ejectment. It is provided specifically how compensation may be obtained for an encroachment by a wall, of less than seven inches on an adjoining lot. But we do not desire to be understood as intimating that any claim to that one inch of ground could be maintained by the owner of lot No. 6. We express no opinion upon that subject.

This action, as we understand it, is brought for the recovery of the overhanging or projecting part of the second story of the building on lot 5, to the extent of three feet six inches over the dividing line, and upon lot 6. The declaration is not for a house or any part of a building, but is for a piece of ground described by metes and bounds. Lot No. 6 is in the possession of the plaintiff, and he does not claim or show by proof that he has been ousted of the possession of the ground by the defendant, except as to the one inch, which is not in question here. It is simply the overhanging structure, a projection of the second story of the house on the adjoining lot No. 5, that he seeks to recover, according to the agreement of the parties. Whether an action of ejectment will lie in such case is exceedingly doubtful. Without stopping to examine the authorities in detail, we shall do nothing more than refer to 7 Encyc. Pl. & Prac., p. 274, where the authorities are collected, and where it is said,— " The cases are not altogether harmonious as to whether or not the action will lie against the owner of an overhanging roof, or a projecting cornice, but the weight of authority is, we think, that the action in such case cannot be maintained. The reason would seem to be that the sheriff cannot deliver possession, and the proper remedy is by an action for a nuisance."

But waiving the question of the right to maintain the action, the more important question is as to the extent and effect of the alleged implied grant of an easement for the benefit of the house on lot No. 5, as against lot No. 6. Both lots are in the same subdivision and are adjoining each other, and they belonged to the same owner, and the houses on both lots were built by him while he was such owner, and the lot 5, with the building and all improvements, easements, rights and privileges thereto appertaining, were first conveyed and disposed of by the then owner of both lots. By this severance, what was at that time a mere quasi-easement for the benefit of the building on lot No. 5, became a fixed and permanent easement by implied grant, and the owner thus conveying the one lot as the quasi-dominant

tenement could not derogate from his grant or deny to his grantee, or those claiming under the latter, the use and benefit of what was at the time of severance of the unity of ownership an open and apparent easement reasonably necessary to the enjoyment of the part granted. The principle seems to be well settled, both upon principle and authority, that where the owner of both the quasi-dominant and quasi-servient tenements conveys the former, retaining the latter, all such continuous and apparent quasi-easements as are reasonably necessary to the enjoyment of the property pass to the grantee, giving rise to an easement by implied grant. This principle was fully recognized by the Supreme Court of this District in general term, in the case of *McPherson* v. *Acker*, MacA. & M. 150, 157. The cases upon the subject of implied grants of easements are very numerous, both English and American; but the more recent cases make a well-defined distinction between an implied grant and an implied reservation of an easement. This distinction is well stated by Cotton, L. J., in the case of *Russell* v. *Watts*, 25 Ch. Div. 559, where he said: " When a man grants a thing he must be considered as granting that which is necessary in the proper sense of the word for the enjoyment of that which he grants, and he cannot derogate from his own grant; he cannot do that which will destroy or render less effectual that which he has granted. But as regards reservation, the matter stands on principle in a very different position. To say that a grantor reserves to himself in entirety that which may be beneficial to him, but which may be most injurious to his grantee, is quite contrary to the principle on which an implied grant depends. That principle is that a grantor shall not derogate from or render less effectual his grant or render that which he has granted less beneficial to his grantee."

The same principle is clearly stated in the case of *Wheeldon* v. *Burrows*, 12 Ch. Div. 31, where the previous cases upon the subject are examined, and the distinction between an implied grant and an implied reservation clearly drawn. In that case it was said, that where upon the grant by the

owner of a tenement of a part of that tenement as it is then used and enjoyed, there will pass to the grantee all those continuous and apparent easements (by which, of course, is meant quasi-easements), or, in other words, all those easements which are necessary to the reasonable en-joyment of the property granted, and which have been and are at the time of the grant used by the owner of the en-tirety for the benefit of the part granted. But if the gran-tor intends to reserve any right over the part or tenement granted, it is his duty to reserve it expressly in the grant. There may be exceptions to this general rule in regard to implied reservations, such as necessary drains, or right of way of necessity, and the like, for the benefit of the part retained by the grantor, but such reserved rights will al-ways depend upon the special circumstances of the case. No such exception, however, has any application in this case. Here the quasi-easement pertaining to the house on the lot granted, and which became the dominant tenement, was open and apparent, and was and is necessary to the enjoyment of the house, and could not be removed without serious injury to the house. It is very clear the grantor himself, as the owner of lot No. 6, not having made any such reservation in his grant, could not, with success, have asserted a claim to have the projection removed from the house on lot 5, nor could he have maintained an action against the owner of that lot as for a nuisance, because of such projection. And what he could not do, those who claim under him can not do, because they are equally bound by the grant made by the original grantor of lot 5 as the grantor himself under whom they claim and hold lot 6. They hold the latter lot as the servient tenement of the easement created by the prior grant of William D. Cronin. It was the right of the purchaser, under the prior grant by William D. Cronin, to hold and enjoy the house upon lot 5 in the same condition in which it had been conveyed by such prior grant, and neither Cronin, the prior grantor, nor any subsequent grantee under him of lot 6, could question that right. Washb. on Eas. 60; *Robbins* v. *Barnes,* Hob.

131; *Fetters* v. *Humphreys,* 18 N. J. Eq. 260; *Lampman* v. *Milks,* 21 N. Y. 505; *Katz* v. *Kaiser,* 154 N. Y. 294; *New Ipswich W. L. Factory* v. *Batchelder,* 3 N. H. 190.

We find nothing in the agreed state of facts to indicate that the judgment of the court below was not in all respects correct, and we enter that judgment affirmed on the facts agreed to by the parties.      *Judgment affirmed.*