*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CV-1226

JAMES THOMAS MARTIN, *et al.*, APPELLANTS,

v.

NOEL L. BICKNELL, *et al.*, APPELLEES.

Appeal from the Superior Court of the District of Columbia
(CAB-0420-12)

(Hon. Gregory E. Jackson, Trial Judge)

(Argued October 22, 2013                    Decided September 18, 2014)

*Thomas G. Corcoran, Jr.*, for appellant, who was also on the brief.

*Valerie L. Hletko,* with whom *Alexander S. Leonhardt* was on the brief, for appellee.

Before BECKWITH, EASTERLY, and MCLEESE, *Associate Judges*.

EASTERLY, *Associate Judge*: Where the right to use real property is at issue, it cannot be gainsaid: Clarity is best; ambiguity breeds discord. This case is about the use of adjoining or shared—depending on one's view of the facts—driveways. Neighbors James Thomas Martin and his spouse Antoinette Baarns, and Noel

Bicknell and his spouse, Caitlin Mackenzie,[1] have a dispute over use of the driveway from which they gain access to their respective garages, a driveway that bridges their common property line. The Martins sued and asserted that they have an easement to use a portion of the Bicknells' side of the driveway. The court determined that the Martins had failed to state a claim, either for an implied grant of an easement or a prescriptive easement, and dismissed their complaint. We review the trial court's order de novo[2] and reverse. We publish this opinion in the hope that a clearer explication of the requirements to claim an implied grant of an easement or a prescriptive easement will help District residents to better understand their own and their neighbors' property rights, and will perhaps even encourage resolution of similar disputes out of court.

---

[1] For ease of discussion we refer to the couples as the Martins and the Bicknells.

[2] *See Grayson v. AT&T Corp.*, 15 A.3d 219, 228 (D.C. 2011) (en banc).

# I.  Facts and Procedural History[3]

The Martins and the Bicknells own adjoining townhomes (on Square 1327 lot 52 and 53 respectively), built by the same developer in the 1930's, in the Foxhall Village neighborhood in the District of Columbia.  Behind their homes, a twelve-foot-wide[4] driveway connects their garages to an alleyway.  The property line dividing their lots falls down the center of the driveway.

The Martins purchased their house on lot 52 in 1969.  For more than thirty years, without incident, they gained access to their garage via the common driveway, and in so doing, drove over their property line with lot 53 (the Martins' neighbors similarly drove over the Martins' side of the driveway to gain garage access).  In 2001, the then-owner of the neighboring house, Edward Ponzi, converted his garage into a rental unit, so that it was no longer usable for parking, but the Martins' use of the driveway continued unchanged.  Later that year Mr.

---

[3]  In reviewing an order granting a Rule 12 (b)(6) motion "we accept the allegations of the complaint as true, and construe all facts and inferences in favor of the plaintiff." *Grayson*, 15 A.3d at 228 (brackets and internal quotation marks omitted).  We look to the Amended Complaint filed by the Martins on February 22, 2012.

[4]  The driveway is wider for the first eight feet outside the garages and then narrows to twelve feet for the remainder of the distance to the alley.

Ponzi sold his property to the Bicknells. The Bicknells, who did not have a garage for parking, informed the Martins that they intended to park their car on their side of the driveway. The Martins insisted that when the Bicknells parked their car in their driveway that they ensure that one front and back wheel of the vehicle were parked on the dirt of their back yard, so that the parked car did not impede the Martins' access to their garage. When the Bicknells did not park their car in this manner, the Martins would ask them to move their car and the Bicknells complied. This continued until January 2, 2012. On that day, the Bicknells' car was parked so as to block the Martins from gaining access to their garage and the Bicknells refused to move their vehicle.

By this point the relationship between the neighbors had apparently soured and little time was devoted to an out-of-court resolution. On January 18, 2012, the Martins sued the Bicknells, alleging that the Martins had a legal right to use the Bicknells' side of the driveway either through (1) an implied grant of an easement made by the original developer and conveyed to the Martins when they purchased the property "together with all easements appurtenant thereto" or, in the alternative, (2) a prescriptive easement through the Martins' "open, visible, notorious, continuous, exclusive and adverse" use of the driveway.

The Bicknells filed a motion to dismiss under Super. Ct. Civ. R. 12 (b)(6). With respect to the Martins' claim of an implied grant of an easement, the Bicknells argued that it was insufficient for the Martins to allege that an implied easement was "reasonably necessary" to the full use and enjoyment of their property, and that instead a showing of "strict necessity" is required. With respect to the Martins' claim of a prescriptive easement, the Bicknells did not dispute the Martins' recitation of the requisite elements, but argued that the Martins had failed to allege supporting facts—specifically that they had "adversely or exclusively" used the common driveway.

The trial court granted the Bicknells' motion. The trial court ruled that a showing of strict necessity was required for an implied grant of an easement. And it agreed with the Bicknells that to support his prescriptive easement claim the Martins had to allege that that his use of the common driveway was both adverse and exclusive, but had failed to plead sufficient facts to make this showing. This appeal followed.

## II.    Implied Grant of an Easement

Before addressing the issues presented in this case, we briefly review the various types of easements recognized in this jurisdiction.  An easement is "[a]n interest in land owned by another person, consisting in the right to use or control the land. . . for a specific limited purpose."[5]  An express easement, acknowledged in a deed conveying ownership of property, is always preferred under the law.[6] Under certain circumstances, however, courts will recognize an implied easement. As this court has recognized, "[g]enerally, there are two types of implied easements, an implied grant, and an implied reservation."  *Hefazi v. Stiglitz,* 862 A.2d 901, 912 (D.C. 2004).  In the case of an implied grant of an easement, a property owner has subdivided and sold some or all of his property, but it is implied that he also granted to the purchaser of one parcel, the dominant estate,[7] an easement over another parcel, the servient estate[8]—perhaps to allow access to a

---

[5]  Black's Law Dictionary 622 (10th ed. 2014).

[6]  *See* Restatement (Third) of Property: Servitudes § 2.11 cmt. b (2000) ("If the transaction is properly handled, the nature of the servitude, the land benefited and burdened by the servitude, [and] the nature of the interests of the parties . . . will be expressly identified.").

[7]  Defined as "[a]n estate that benefits from an easement."  Black's Law Dictionary 667 (10th ed. 2014).

[8]  Defined as "[a]n estate burdened by an easement."  *Id.*

necessary resource (e.g., water or a public road).[9] In the case of implied reservations of easement, the owner has subdivided but retained possession of the dominant estate, impliedly reserving use of a portion of the servient estate for his benefit. Because these two types of easements arise under different circumstances, each implicating distinct equitable concerns, the elements required to establish the existence of these easements are different. For implied grants of easements, the owner of the dominant estate need only assert that the easement is reasonably necessary to the use of his property. But for implied reservations of easements the owner of the dominant estate must show that the implied easement is strictly necessary.

In this case, the trial court seemed to hold the Martins to the standard for an implied reservation of an easement instead of an implied grant. In its order granting Mr. Bicknell's motion to dismiss, the trial court incorrectly stated that Mr. Martin had to allege that his use of the easement is "apparent, continuous, and strictly necessary for the enjoyment of the land retained," citing *DLY-Adams Place, LLC v. Waste Mgmt. of Md., Inc.*, 2 A.3d 163, 167 (D.C. 2010) (analyzing a claim

---

[9] Where an easement is implied through a "simultaneous conveyance" of two parcels once held in unity, the easement is recognized as a "grant and [not an] implied reservation." *See* Leonard A. Jones, A Treatise on the Law of Easements § 139 (New York, Baker, Voorhis & Company 1898).

of an implied reservation of an easement).  Accordingly, we conclude that the trial court erred in dismissing the Martins' claim that they had an implied grant of an easement.

The Martins argue that the question of how to prove an implied grant of an easement "is a case of first impression in the District of Columbia."  While both parties have failed to cite to them, we have identified a number of decisions on this subject, which, while old, are still binding precedent.  *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C. 1971).  Since the early twentieth century, courts in the District of Columbia have held that that in order for an easement to be transferred through an implied grant, the dominant and servient estates must have at one time been held in unity of title, that unity must have been severed, and the implied easement created at severance must be apparent, continuous, and *reasonably necessary* to the enjoyment of the property.  *See Scaggs v. Gallagher*, 45 App. D.C. 450, 453 (D.C. Cir. 1916) (upholding an implied easement where the easement was "reasonably necessary to the enjoyment of the parcel conveyed"); *Robinson v. Hillman*, 36 App. D.C. 241, 248 (D.C. Cir. 1911) (upholding an implied easement where the "use was reasonably necessary to the enjoyment of [the] premises"); *Wilson v. Riggs*, 27 App. D.C. 550, 554 (D.C. Cir. 1906) (noting that "[t]his court and the supreme court of this District . . . have not limited such appurtenances to those

which are absolutely necessary to the enjoyment of the property"); *Frizzell v. Murphy*, 19 App. D.C. 440, 445-46 (D.C. Cir. 1902) (emphasis added) (recognizing an implied grant of an easement where the easement was "reasonably necessary to the enjoyment of the part granted"). The reasonable necessity standard makes sense in light of the rationale for recognizing implied grants of easements: to give value to the consideration given by a purchaser for all apparent and implied advantages attached to the property,[10] while also balancing the burdens such an easement may impose on the servient property.[11]

Implied reservations of easements are different. Where the seller of the servient estate is also the owner of the dominant estate, there is greater concern that he will take advantage of the situation. In order to sufficiently protect an unsuspecting purchaser from unfair burden and surprise,[12] we recognize implied reservations of easements only in those situations where it is manifestly clear that

---

[10] *See* Jones, *supra* note 9, at § 126 ("The privilege apparently annexed to the estate granted must be of value to it, and the grantee must be presumed to have taken it into consideration as an advantage to such estate and to have paid for it in his purchase." (citations omitted)).

[11] *See* Restatement (Third) of Property: Servitudes § 2.11 cmt. f (explaining that the rationales for recognizing implied grants of easements include "meeting the reasonable expectations of land owners and purchasers, and arriving at results that are fair to all parties," as well as the "overall economic impact" on each party of a decision to grant or deny an implied easement).

[12] *See id.*

the dominant property will retain an easement over the purchaser's land, i.e., situations where the easement is "strictly necessary"[13] to the use and enjoyment of the dominant estate. *Douglass v. Lehman*, 66 F.2d 790, 792 (D.C. Cir. 1933).

In their brief on appeal, the Bicknells cite *Douglass* to support their contention that the applicable standard is "strict necessity" for both an implied reservation and an implied grant of an easement. But there was no implied grant of an easement in *Douglass*. Thus the passing statement in *Douglass* that "an implied reservation or grant of an easement can only be said to arise where at the time of the deed or grant the existing servitude is . . . strictly necessary to the enjoyment of the dominant estate," *id.* at 792, is merely dicta in so far as it purports to set a higher bar for the degree of necessity of an implied grant of an easement. Nor does this statement in *Douglass* gain the force of binding precedent by its repetition—again as dicta—in *Wood v. Neuman*, 979 A.2d 64 (D.C. 2009). In *Wood*, this court

---

[13] The case law discussing "strict necessity" has confusingly defined "necessary" as "meaning that there could be no other reasonable mode of enjoying the dominant tenement without [the] easement." *Douglass v. Lehman*, 66 F.2d 790, 792 (D.C. Cir. 1933); *see also Hefazi*, 862 A.2d at 913 (citing Jones, *supra* note 9, at § 156). Whatever it means, "strictly necessary" unquestionably demands a higher degree of necessity than the "reasonably necessary" element for an implied grant. In any event, because there is no claim of an implied reservation of an easement in this case, we need not resolve any ambiguity in the elements for proof of such an easement.

upheld the trial court's ruling that the plaintiff had no implied easement where "the 'need' for an easement (in lieu of 'making arrangements' with neighbors to facilitate repair work) arose from the parties' 'simple inability to get along as neighbors in a productive and cooperative manner'; and because there 'appears to be no current need' [for the neighbors to access each other's property]." 979 A.2d at 71-72. In other words, this court upheld the trial court's ruling determining that the plaintiffs did not enjoy an implied grant of an easement where the trial court determined that the plaintiff had failed even to show reasonable necessity for such an implied easement.

Having clarified that a showing of reasonable necessity is all that must be alleged to state a claim for an implied grant of an easement, we determine that the trial court incorrectly granted the Bicknells' motion to dismiss on the ground that the Martins had failed to plead strict necessity.

The Bicknells additionally argue, however, that the Martins failed to allege even reasonable necessity for an implied easement. We are not persuaded. The Martins did not merely recite the words "reasonably necessary" in their complaint. They also explained that their property and the property of the Bicknells (adjacent lots 52 and 53) had been jointly developed with a common driveway; that both

lots have garages that can accommodate a vehicle that is seven feet wide; that the shared driveway between them is only twelve feet wide; that the lots had been individually sold; and from the time of the original sale to present,[14] the buyers of these lots had "drive[n] a vehicle . . . over the portion of that common concrete driveway" belonging to their neighbor in order to gain access to their garage from the alley and vice versa. The Martins further asserted that they had insisted that the Bicknells keep the driveway clear so that the Martins could access their garage and that on the day that the Bicknells parked their vehicle in the driveway with "all four of the wheels . . . parked on their side of th[e] common concrete driveway" Mr. Martin was "prevented . . . from driving his vehicle from the alley into his garage." Taking these facts in the light most favorable to the Martins as we must,[15] there is ample basis for an inference that the Martins' use of a portion of the Bicknells' driveway is reasonably necessary for them to be able to travel between the alleyway and the garage, and thus to the enjoyment of their property. Moreover there is sufficient basis for an inference that this has been the case since the time the adjacent properties were developed and divided (as noted above, an implied easement may only be created at the time the dominant estate is severed

---

[14] The Martins explained that the only interruption in this reciprocal practice was the brief period of time when the predecessor owner to the Bicknells' property converted their garage into a rental unit.

[15] See *supra* note 3.

from the servient estate).  As designed, the driveway was originally twelve feet and the garage was built to house a seven-foot vehicle; a seven-foot-wide vehicle cannot stay on its "own" side of a twelve-foot-wide driveway.

The Bicknells also argue that that the Martins' interest is purely aesthetic, because they could access their garage if they were willing to remove the hedge growing on their side of the driveway or alter their backyard patio.  These assertions have no foundation in the Amended Complaint, and are based on documents that are not part of the appellate record.[16]  It may be that the Martins will not be able to prove their case, in particular, the requisite reasonable necessity for an implied grant of an easement; but that is not the question before us.  We hold only that the Martins have fairly stated a claim that they enjoy an implied grant of an easement, *see Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531, 543-45 (D.C. 2011) (adopting federal pleading standards that require plaintiffs to make "more than an unadorned, the-defendant-unlawfully-harmed-me

---

[16]  While the Amended Complaint mentions the existence of a hedge, it does not contain any allegation as to the impact of the hedge on the Martins' ability to use the driveway.  To support their assertion that the Martins merely refuse to remove the hedge, the Bicknells cite in their brief on appeal to a declaration that was filed by Mr. Martin after the notice of appeal had already been filed, and is thus not part of the record before us.

accusation" and to allege sufficient facts which if accepted as true would "state a claim to relief that is plausible on its face" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))), and thus that the trial court erred in granting the Bicknells' motion to dismiss this claim.

## III.    Prescriptive Easement

We turn to the trial court's ruling that the Martins failed to state a claim for a prescriptive easement.  There was no dispute in the trial court as to the requisite elements; both parties agreed that a prescriptive easement requires open, notorious, exclusive, continuous, and adverse use for the statutory period of fifteen years. The only issue was whether the Martins had pled sufficient facts to support their allegation that their use of the Bicknells' side of the driveway was adverse and exclusive.  The trial court ruled that they had not.  We disagree that the Martins failed to plead sufficient facts to support adversity, and we clarify that proof of exclusivity is not in fact needed in order to make out a claim for a prescriptive easement.

To acquire a prescriptive easement, use of the easement must be "adverse," that is, "not accompanied by any recognition, in express terms or by implication, of

a right in the landowner to stop such use now or at some time in the future."

*Hefazi*, 862 A.2d at 910-11 (internal quotation marks omitted). Permissive use

defeats a claim of adversity, but "[m]ere acquiescence is not permission." *Aleotti*

*v. Whitaker Bros. Bus. Machs., Inc.*, 427 A.2d 919, 922 (D.C. 1981). The trial

court determined that the Martins had pled facts demonstrating that their use of the

neighbor's side of the drive was permissive, not adverse, in the years prior to the

Bicknells' purchase of lot 53; the court further determined that there was

insufficient time for the Martins, who filed suit in January 2012, to establish

adverse use after the Bicknells purchased their property in 2001. Construing the

alleged facts in the light most favorable to the Martins as we must, we disagree that

the Martins acknowledged permissive use, or that the adverse use they alleged

cannot amount to the requisite fifteen years.

The trial court's determination that the Martins' use of the shared driveway

was initially permissive appears to have been based on statements Mr. Martin

made in a declaration filed in support of the Martins' motion for a preliminary

injunction.[17] But we do not view the statements Mr. Martin made in his

---

[17] When considering a Rule 12 (b)(6) motion, trial courts are generally limited to the four corners of the complaint and may only consider documents "incorporated in the complaint"—i.e., either documents attached to the complaint or documents which do not allege "facts extrinsic to the pleadings." *Washkoviak v.*

(continued…)

declaration as defeating, at the pleading stage, the adversity element of the Martins' claim to a prescriptive easement.

In his declaration, Mr. Martin stated that at some unspecified point in time after he purchased his house in 1969, he had had a conversation with a previous owner of the Bicknells' property, Powell Bradfield, in which they "discussed the fact that each of us had been granted the right to open his garage door over the side of our common concrete driveway owned by the other, and that each of us had the right to cross over our common property line, where it separated our common concrete driveway along its length, with a vehicle in order to use both sides of our common concrete driveway to drive that vehicle into and out of either of our respective garages." He further stated that for Mr. Bradfield's lifetime he and Mr. Bradfield "cooperated in a neighborly way" to allow each other use of the common driveway.

---

(…continued)
*Student Loan Mktg. Ass'n*, 900 A.2d 168, 178 (D.C. 2006). In this case the Martins specifically requested in their opposition to the motion to dismiss that the trial court consider the Martins' declaration as "incorporated into the Amended Complaint," and they have not opposed the trial court's consideration of this declaration on appeal.

Mr. Martin's conversation with Mr. Bradfield does not definitively establish permissive use; instead, it can fairly be understood as a discussion of each neighbor's respective claim of right (derived from reciprocal implied grants of an easement from the original developer) that were not at all contingent on the other's permission. Such a claim of right, which necessarily rejects the "right in the landowner to stop such use now or at some time in the future," *Hefazi*, 862 A.2d at 910-11 (internal quotation marks omitted), provides sufficient factual support for the element of adversity at the motion to dismiss stage. *See* Jones, *supra* note 9, at § 179 ("The use of [an easement] under a parole consent given by the owner of the servient estate to use it as if it were legally conveyed, is [adverse] use. . . . The distinction is, whether I grant you a right over or upon my property to use as your own[,] or as my own—as an enjoyment and privilege belonging to you[,] or as belonging to me.").

The trial court also ruled that the Martins failed to factually support the "exclusivity element of [their] claim of prescriptive easement," and that the Martins' claim failed because they had not alleged that they had been "blocking [the Bicknells'] access to [the Bicknells'] half of the driveway for a period of at

least fifteen years." We conclude that the exclusivity element required in an adverse possession case[18] does not pertain to a claim of a prescriptive easement.

A review of our prescriptive easement cases reveals that courts in the District of Columbia have sometimes included exclusivity in the list of elements of a prescriptive easement, and sometimes not.[19] And even when this court has included exclusivity in our list, it has never garnered separate attention, much less been the reason why a claim to a prescriptive easement failed.[20] It seems exclusivity has been recited with the other elements of prescriptive easements that have been imported from adverse possession cases, but it is a layabout; it has never done any work.

---

[18] *See*, *e.g.*, *Patterson v. Sharek*, 924 A.2d 1005, 1012 (D.C. 2007) ("[T]he adverse claimant's possession cannot be shared with the true owner."); *Smith v. Tippett*, 569 A.2d 1186, 1190 (D.C. 1990) (explaining that in adverse possession context "possession need not be absolutely exclusive," but the claimant must "[hold] possession of the property for himself as his own and not for another" and possession "cannot be shared with the true owner").

[19] *Compare Kogod v. Cogito*, 200 F.2d 743, 744-45 (D.C. Cir. 1952) (use must be "open, continuous, and adverse"), *with Umhau v. Bazzuro*, 133 F.2d 356, 358 (D.C. Cir. 1942) (use must be "open, notorious, exclusive, continuous, and adverse"), *and Chaconas v. Meyers*, 465 A.2d 379, 381-82 (D.C. 1983) (same).

[20] In both *Umhau*, 133 F.2d at 358, and *Chaconas*, 465 A.2d at 383, the court determined that the plaintffs had failed to plead or prove adverse use, not exclusivity.

This makes sense, because, as the Restatement explains, "servitudes are generally not exclusive." Restatement (Third) of Property: Servitudes § 2.17 cmt. g. To the contrary, as this court acknowledged in *Kreuzer v. George Washington Univ.*, 896 A.2d 238 (D.C. 2006), "[t]he servient owner is entitled to make any use of the servient estate that will not unreasonably interfere with enjoyment of the servitude." *Id.* at 243 (quoting the Restatement (Third) of Property: Servitudes § 2.17 cmt. g) (examining the right to use a party (or common) wall between two houses, the use of which is "acquired by prescription"). Furthermore, it is often the case that a prescriptive easement, for example to use a driveway or a walkway, is shared. *See* Restatement (Third) of Property: Servitudes § 2.17 cmt. g ("[S]everal parties may enjoy similar servitudes in the same land without conflict, as with easements to use roads.").

The rationale for a showing of exclusivity in the context of adverse possession simply does not intelligibly transfer to prescriptive easements and only causes confusion. Again, as the Restatement explains:

> In adverse-possession doctrine, the exclusivity requirement describes the behavior of an ordinary possessor and serves to give notice to the owner. In servitudes cases, however, it puts courts into the awkward position of explaining that the requirement does not mean that the use is such as to exclude others, or, that the user in fact has excluded others from the servient

> estate. Instead, [courts] explain, it simply requires that the user have acted independently of rights claimed by others. To the extent the exclusivity requirement serves any function in prescription cases, it is redundant.

*Id.*

We now clarify that a plaintiff need not show exclusivity to make out a claim of a prescriptive easement. Thus, the Martins' concurrent and overlapping use of the driveway with the Bicknells was entirely consistent with, and not a legitimate basis to dismiss, their claim of a prescriptive easement.

## IV.   Conclusion

For the foregoing reasons, we hold that the trial court erred in granting the motion to dismiss. The judgment of the trial court is reversed and we remand for proceedings consistent with this opinion.

*So ordered.*